have been engaged in that business. I have always made money when I could do so legitimately." Question. "What was the last legitimate act of business you transacted by which you made money?" A. "Today; selling a barrel of spirits, as a broker, not belonging to me." Question. "For whom?" Objected to by the bankrupt's counsel. The register thinks it ought to be answered. If the spirits did belong to another, the subject is ended. If the deponent is in any way mistaken, and the spirits in fact belonged to him, the creditor should be allowed to discover it. Mr. James, the bankrupt's counsel, demands that the question thus made be certified to the judge. Question. "What was the other and last previous transaction to the one mentioned in which you made money?" Mr. James objects to this question on behalf of the bankrupt, on the ground that no inquiry is relevant as to the manner in which he has earned his livelihood, since his adjudication of bankruptcy, unless foundation is laid for imputing to him possession of property which ought to be given up to his assignee. The register thinks the interrogatory a proper one, as tending to discover and ascertain the truth in respect to that which the counsel thus allows. Mr. James demands that the question be certified to the judge.

---

## Case No. 8,644.

### In re LYON.

[7 N. B. R. 182;[1] 4 Chi. Leg. News, 421.]

District Court, D. Minnesota. 1872.

SALE OF PERSONAL PROPERTY— PASSING OF TITLE —ASSIGNEE IN BANKRUPTCY—DISCRETION.

A written contract provided that the ownership of personal property was not to pass until the stipulated price had been paid. *Held*, that under the contract the ownership would remain in the vendor although the vendee had possession, and all but a small portion of the money due had been paid; that if the assignee in bankruptcy shall deem it for the interest of the creditors, he may pay the balance due to the vendor and hold the property for the benefit of the estate.

[Cited in Adams v. Lee, 64 N. H. 422, 13 Atl. 787.]

[In the matter of J. H. Lyon, a bankrupt.]

NELSON, District Judge. A petition is presented by C. Schulenberg, who alleges that he is the owner of certain property now in the possession of the messenger or assignee in bankruptcy in this case, and praying that by an order of this court he may have the same restored to him. This petition was filed on the twenty-sixth day of

[1] [Reprinted from 7 N. B. R. 182, by permission.]

June, eighteen hundred and seventy-two, and by an arrangement between the solicitors an answer was filed upon the same day by the creditors, who commenced the proceedings in invitum against the bankrupt. An agreed statement of facts was also filed, and the case was submitted upon written briefs for the decision of the court. The proceedings are somewhat informal, and I should not be inclined to consider the case as presented by the pleadings, on the ground that the solicitors had mistaken the practice, were I not assured that the parties on both sides would submit to the decision rendered and did not desire an appeal.

The petitioner claims, and the agreed state of facts so shows, that the possession of the property in controversy in Lyon, the bankrupt, was by virtue of an agreement between the latter and him, to sell it upon certain conditions precedent to be performed by the vendee before any right of ownership passed from the vendor: that the vendee had failed to perform such conditions, by the non-payment of the purchase money as it fell due. The creditors deny that the possession of the property was delivered under the agreement, and claim that there was a waiver of the original agreement (which was in writing,) and that by the acts of the petitioner, who was the vendor, the ownership passed at the time of delivery, as well as the mere possession, and was so intended. It will be necessary to a proper understanding of the controversy to recur to the agreement, which is as follows: "Whereas, the undersigned, Charles Schulenberg, of Detroit, Michigan, of the first part, has agreed to sell to J. H. Lyon, of St. Paul, Minnesota, of the second part, the following property, that is to say, three * * * billiard tables * * * all for the sum of twelve hundred dollars and ten cents, as follows: (here follow the time and amounts of the different payments) and for which sums unpaid the party of the second part has given to the party of the first part his notes, and upon the payment thereof, and performing all other conditions on his part herein mentioned, the party of the first part will execute and deliver a good and valid bill of sale, as of this date, for said property. And the party of the second part agrees * * * to have insured and kept insured for the use and benefit of the party of the first part, the said property, for the full amount at all times unpaid therefor. (Here follow other conditions not material.) And it is further agreed that the party of the second part may have possession of said property and retain the same, if the above conditions and agreements on his part are performed. * * * And it is distinctly agreed and understood, that the title to said property and right thereto is retained by the party of the first part, and does not pass by this agreement until the purchase money * * * is fully paid, according to above terms, and any payments

made shall be forfeited if any default occurs under this agreement. * * * Dated at St. Paul, Minn., this twenty-seventh day of September, eighteen hundred and seventy-one. C. Schulenberg, per A. A. Sanger. J. H. Lyon."

The acts of the vendor relied upon by the creditors to show a change in the conditions of the written contract which would affect the rights of the parties under the same, and transfer the ownership of the property to the vendee, with the right of possession, are: I. That the vendor instructed his agent to get the two notes first named in the agreement endorsed to his satisfaction in his settlement with the vendee. II. That the property was shipped to the petitioner's agent, and the freight and shipping bills were transferred to the bankrupt upon the execution of the agreement, the signing of the notes, the endorsement of the same, and the delivery of the policy of insurance. The agreement is very clear and distinct in its terms, and contains conditions not unusual in conditional sales, where the ownership does not pass until all the conditions precedent are performed by the vendee.

These contracts are sustained as against creditors of the vendee in every state, save, perhaps, Pennsylvania, in which state it may have been the policy of the courts to discountenance the possession of personal property and exercise of ownership of the same as against creditors where delivery is made under a written contract, although by the express terms of the same the ownership is not to pass. I confess I am unable to feel the force of the reasoning which would change the entire terms of the contract between the parties, and instead of carrying out their intention, fail to give effect to their clearly expressed will. It is true there is an apparent ownership of property which might enable the party to obtain credit and impose on his creditors; but this is true in all cases where there is a mere possession of property, even under a contract of bailment.

The fact that the two notes were endorsed does not affect the contract. The vendee appears to have yielded to the request of the vendor and procured an endorser, but he could have enforced a performance of the written agreement on the part of the vendor, as soon as he had complied with the conditions expressed in the contract, unless it had been the clear understanding and intention of the parties that the first two notes named were to be endorsed by a responsible person. We must presume, from the willingness of the vendee to procure an endorser, that such was the case, for there is no pretense that he protested against doing it.

The ownership of the property was not to pass until the purchase price had been paid, and even if the vendee had paid all but a small portion of the same at the time of the surrender of the possession to him, and the contract had been signed, and the delivery made under it, still the ownership would have remained in the vendor until the final payment. Creditors even could not enforce their claims without paying to the vendor the remaining portion of the purchase money. I do not think the delivery of the shipping bills affected the question of ownership after the execution of the contract, the delivery of the notes, and the policy of insurance. Lyon was entitled to the right of possession, and the shipping bills were given him so as to enable him to obtain it from the warehouse or the carrier. The possession of the bill of lading and shipping are explained by the contract between the parties., and the rights of the parties are therein defined.

Upon the whole, I shall order the property to be restored to the petitioner, unless the assignee, who has been appointed since the proceedings have been commenced, should deem it for the interest of the creditors to pay the balance due the petitioner under the agreement, and hold the property for the estate. Ordered accordingly.